SUCCESSION OF
RAYMOND JOHN BRANDT

NO. 21-CA-131

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 801-807, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING


December 29, 2021


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg


**REVERSED; EXCEPTION OF NO RIGHT
OF ACTION DENIED; REMANDED**
    **HJL**
    **JGG**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy Clerk, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
TODD DEMPSTER
 Philip A. Franco
 Jeffrey E. Richardson
 Courtney C. Miller
 William K. Wright, IV

COUNSEL FOR PLAINTIFF/APPELLEE,
MARC S. MILANO, TRUSTEE OF THE RAYMOND J. BRANDT
REVOCABLE TRUST
 Timothy S. Madden
 Henry A. King
 J. Grant Coleman
 Robert J. Burvant
 W. Spencer King

**LILJEBERG, J.**

This matter involves a Petition To Annul Probated Testament filed by appellant, Todd Dempster, in the succession proceeding for the decedent, Raymond John Brandt.  Mr. Dempster is named as a successor executor in a will executed by the decedent in 2010.  Mr. Dempster filed a petition to annul the probate of a subsequent will executed by the decedent in 2019.  Marc S. Milano, the successor trustee of a trust named as the sole legatee in the probated will, filed an exception of no right of action arguing that Mr. Dempster has no right of action or interest to seek to annul the probated will because he is not an heir, legatee, descendant or family member of the decedent.  On December 1, 2020, the trial court sustained Mr. Milano's exception of no right of action and dismissed Mr. Dempster's petition to annul the probated will with prejudice.  The trial court stated in its judgment that Mr. Dempster, "who is not an heir at law nor a trustee nor a legatee named in any Last Will and Testament of Decedent, has no procedural right to file a claim seeking to invalidate Decedent's Last Will and Testament."  Mr. Dempster now appeals this ruling.

After considering the applicable law and the specific factual circumstances at issue in this matter, we find that as an executor named in a prior will that would become operative, Mr. Dempster possesses a right of action to seek to annul the probated will.  Accordingly, we reverse the trial court's judgment sustaining the exception of no right of action and dismissing the Petition To Annul Probated Testament filed by Mr. Dempster, and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Three weeks before his death, Raymond John Brandt executed a will on October 24, 2019 ("2019 Will"), revoking all prior wills and codicils and leaving his entire estate to the Raymond John Brandt Revocable Trust, an *inter vivos* trust established by Mr. Brandt on January 16, 2015 (the "2015 Trust").  The 2015 Trust

was established in connection with a previous testament executed by Mr. Brandt on January 16, 2015 ("2015 Will"). On October 24, 2019, Mr. Brandt also amended the 2015 Trust to name Mr. Milano as successor trustee upon Mr. Brandt's death.

Mr. Brandt died on November 14, 2019. On November 26, 2019, his surviving spouse, Jessica Brandt, filed a Petition for Probate of Notarial Testament and for Confirmation of Independent Testamentary Executrix, requesting that Mr. Brandt's 2019 Will be probated. That same day, the trial court signed an order probating the 2019 Will and appointing Ms. Brandt as the independent testamentary executrix. On July 10, 2020, Mr. Milano, in his capacity as trustee of the 2015 Trust, sought to have the trust placed into possession of the entirety of the decedent's estate, which includes, among other assets, 15 motor vehicle dealerships.

On October 23, 2020, Mr. Dempster filed the petition to annul the 2019 Will.[1] Mr. Dempster alleged that the 2019 Will was absolutely null under La. C.C. art. 1573[2] because the attestation clause did not comply with the formalities required by La. C.C. art. 1577.[3] He specifically alleged that the attestation clause was defective on the following two grounds:

> The attestation clause in the probated, October 24, 2019 testament is defective because (1) it does not indicate that, in the presence of the

---

[1] Mr. Dempster serves as the Chief Operating Officer of Ray Brandt Auto Group, which oversees the 15 motor vehicle dealerships. He testified at the hearing on the exception of no right of action that he spent the last 27 years working with Mr. Brandt to build the business.

[2] La. C.C. art. 1573 states the "formalities prescribed for the execution of a testament must be observed or the testament is absolutely null."

[3] La. C.C. art. 1577 sets forth the following requirements to execute a notarial will or testament:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

notary and two witnesses, the testator declared that he signed the instrument at the end and on each other separate page and (2) it does not indicate that in the presence of the testator and each other, the notary and the two witnesses subscribed their names.

Mr. Dempster further alleged that the decedent executed three prior wills in 2006, 2010 and 2015. He asserted that the 2015 Will was absolutely null because it contained the same attestation clause as the 2019 Will. He claimed the third will, dated March 29, 2010 ("2010 Will"), should control the succession because it is the most recent, valid notarial will signed by the decedent. The 2010 Will designates Ms. Brandt and Terry Alarcon as co-executors of the decedent's estate and provides that if they are unwilling or unable to serve, then Mr. Dempster is designated as executor:

> I appoint Terry Alarcon and Jessica Brandt, as Co-Executors of my estate and grant them full seizin and dispense him (sic) from furnishing bond. Should both predecease me or should either be or become unwilling or unable to serve, I appoint Todd Dempster as Executor of my estate and grant him full seizin and dispense him from furnishing bond or other security.

The 2010 Will also names Ms. Brandt as trustee of the Raymond J. Brandt Testamentary Trust ("2010 trust") established in the same will. Mr. Dempster alleged in his petition to annul that Ms. Brandt and Mr. Alarcon were both unwilling to serve as executors of the 2010 Will, and therefore, he was the proper party to seek to annul the 2019 Will and enforce the 2010 Will.[4] He requested that the trial court declare the 2019 Will absolutely null and probate the 2010 Will.

In response to Mr. Dempster's petition to annul the 2019 Will, Mr. Milano filed several exceptions, including the exception of no right of action at issue in this appeal. Mr. Milano argued that Mr. Dempster did not have a right of action to seek to annul the 2019 Will because the validity of a will may only be contested by

---

[4] At the evidentiary hearing on the exception of no right of action, Ms. Brandt explained that she would decline to serve as the executrix under the 2010 Will because she would not want to serve as both the executrix and trustee at the same time. Mr. Alarcon also testified that he was unwilling and unable to serve as executor due to health issues. Furthermore, as noted above, Mr. Dempster contends the 2015 Will would not become operative because it is also absolutely null pursuant to La. C.C.P. arts. 1573 and 1577.

an heir, legatee, descendant or family member of the decedent. Mr. Milano alleged that, as the Chief Operating Officer of Ray Brandt Auto Group, Mr. Dempster is under the direct control and supervision of Ms. Brandt, who succeeded her late husband as the Chief Executive Officer of Ray Brandt Auto Group. Mr. Milano claimed that Ms. Brandt had Mr. Dempster file the petition to annul as a part of her attempt to thwart Mr. Milano's efforts as trustee to place the entirety of the decedent's estate into the 2015 trust.

On December 1, 2020, the trial court held an evidentiary hearing and rendered a judgment sustaining Mr. Milano's exception of no right of action. The trial court found that Mr. Dempster has no procedural right to file a claim seeking to invalidate Mr. Brandt's 2019 Will because he was not an heir, legatee or trustee. The judgment also dismissed Mr. Dempster's petition to annul the 2019 Will, with prejudice.[5] On December 15, 2020, Mr. Dempster filed a motion for a suspensive appeal, which the trial court granted on December 22, 2020.

## LAW AND DISCUSSION

On appeal, Mr. Dempster argues the trial court erred as a matter of law when it ruled he has no right of action to file a petition to annul the 2019 Will because he has a real and actual interest in contesting the validity of the will and would benefit from the attack based on three grounds: 1) he is the executor of the estate entitled to fees under the 2010 Will that is operative if the 2019 Will and the 2015 Will are null and void; 2) he has a personal financial interest in the success of the 15 motor vehicle dealerships that are assets of the estate; and 3) he has a nonpecuniary

---

[5] After the trial court sustained Mr. Milano's exception of no right of action, Ms. Brandt filed a "Motion to Determine Validity of Wills" pursuant to La. C.C.P. art. 2853, asking the trial court to determine which will was valid. On January 25, 2021, the trial court rendered a judgment declaring the 2019 Will and 2015 Will to be invalid and absolutely null. Mr. Milano filed a writ application seeking review of the January 25, 2021 judgment. This Court granted the writ application on procedural grounds and found that the trial court erred by invalidating the probated 2019 Will in a manner outside of the exclusive procedure set forth in La. C.C.P. art. 2931, which requires a direct action seeking to annul the probated testament. *Succession of Brandt*, 21-88, p. 6 (La. App. 5 Cir. 4/13/21), 2021 WL 1394693, *writ denied*, 21-741 (La. 10/19/21), 326 So.2d 253 and 21-750 (La. 10/19/21), 326 So.3d 256.

interest in the success of the dealerships because he spent the last 27 years working with the decedent helping to build the business.

La. C.C.P. art. 681 states that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." While the exception of no right of action tests whether the plaintiff has a "real and actual interest" in the action, it does not raise questions of the plaintiff's ability to prevail on the merits or whether the defendant may have a valid defense. *Lemmon Law Firm, LLC v. Sch. Bd. of St. Charles*, 13-376 (La. App. 5 Cir. 12/12/13), 131 So.3d 231, 236. The court assumes the "petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation." *Howard v. Administrators of Tulane Educational Fund*, 07-2224 (La. 7/1/08), 986 So.2d 47, 60. The introduction of evidence is permitted to support or controvert an exception of no right of action. La. C.C.P. art. 931.

The burden of proof of establishing the exception of no right of action is on the exceptor. *Succession of Sylvester*, 16-372 (La. App. 5 Cir. 12/14/16), 215 So.3d 368, 371, *writ denied*, 17-265 (La. 4/13/17), 218 So.3d 119. The determination of whether a plaintiff has a right to bring an action raises a question of law, which requires *de novo* review. *Id*. La. C.C.P. art. 5051 provides that the articles of the Louisiana Code of Civil Procedure "are to be construed liberally, and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves."

We first consider the issue of whether Mr. Dempster has a right of action as the executor entitled to fees under the 2010 Will that is operative if the 2015 and 2019 Wills are null and void. La. C.C.P. art. 2931 governs the procedure one must follow to annul a probated will. Though this provision lists the parties that must be

joined as defendants in such a proceeding, it does not specify the parties who may file a petition to annul a probated testament:

> A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The action shall be tried as a summary proceeding.

La. C.C.P. art. 2972, which is included in the chapter providing general rules of procedure for succession proceedings, states that an opposition to a petition, motion or other application for an order or judgment in a succession proceeding shall allege the interest of the opponent in filing the opposition:

> An opposition to the petition, motion, or other application of a party to a succession proceeding for an order or judgment of the court shall be in writing and be filed within the delay allowed. It shall comply with the provisions of Articles 853 through 863; shall state the name, surname, and domicile of the opponent; *shall allege the interest of opponent in filing the opposition*, and the grounds for opposing the petition, motion, or other application; and shall conclude with a prayer for appropriate relief.  [Emphasis added.]

Section (b) of Official Revision Comments to La. C.C.P. art. 2972 further explains that a person must have a "justiciable interest" to file an opposition in a succession proceeding:

> (b) No person should be permitted to file an opposition in a succession proceeding unless he has a justiciable interest in doing so. The definition of this interest has been left for the determination of the courts, and the requirement has been stated only implicitly in the term "interested person."

Mr. Milano argues that Louisiana courts have generally concluded that only heirs or legatees may bring an action to annul a will or testament.  In support of his argument, Mr. Milano cites to *Succession of Moran*, 485 So.2d 623, 625 (La. App. 4th Cir. 1986), *writ denied*, 488 So.2d 204 (La. 1986) and *Succession of Wilson*, 210 So.2d 602, 604 (La. App. 2nd Cir. 1968).  However, these cases do not state that *only* heirs or legatees can file a petition to annul a probated testament under La. C.C.P. art. 2931, and they did not consider whether an executor or individual

named in a will in a capacity other than as an heir or legatee has a justiciable interest in filing a petition to annul a probated will.

Louisiana courts recognize that one must have a justiciable interest in the succession proceeding in order to have standing to maintain an action to annul the testator's testament. *See Succession of Barbee*, 19-575 (La. App. 4 Cir. 11/27/19), 286 So.3d 461, 466; *Succession of Duskin*, 14-236 (La. App. 4 Cir. 11/19/14), 153 So.3d 567, 571-72; *Succession of Kilpatrick*, 356 So.2d 1083, 1085 (La. App. 2nd Cir. 1978), *writ denied*, 359 So.2d 198 (La. 1978); *Estate of Mallet v. Mallet*, 527 So.2d 30, 31 (La. App. 3rd Cir. 1988). Mr. Milano agrees that courts discussing the concept of justiciable interest in the context of a petition to annul a probated testament have reasoned that in order to have a justiciable interest, one must benefit from the attack if successful:

> For one to be allowed to oppose a succession proceeding, one must have a justiciable interest in doing so. One must therefore be able to benefit from the attack. *Succession of Kilpatrick*, 356 So.2d 1083 (La. App. 2nd Cir.1978), *writ denied*, 359 So.2d 198 (La. 1978), *appeal after remand*, 422 So.2d 464 (La. App. 2nd Cir. 1982), *writ denied*, 429 So.2d 126 (La. 1983). The interest may come in the form of being named as executor of the estate, see *Kilpatrick*, *supra*, or as attorney for a succession, see *Succession of Pope*, 230 La. 1049, 89 So.2d 894 (La. 1956), or gaining an interest as an heir or legatee.

*Estate of Mallet,* 527 So.2d at 31; *See also Succession of Moran*, 485 So.2d at 624-25 ("The general class in whose favor the law grants a cause of action to annul a probated testament is composed of persons who would realize *some benefit* should the attack be successful." [Emphasis added.]).

Mr. Milano and Mr. Dempster disagree, however, as to whether an executor named in an earlier will has a justiciable interest or will benefit from a successful attack on a subsequent will. Mr. Milano argues that Mr. Dempster would not realize any conceivable benefit if the trial court found the 2010 Will to be controlling and contends that Louisiana law does not vest an executor with a right or duty to challenge a will. Mr. Dempster, on the other hand, argues in his first

assignment of error that as an executor named in the 2010 Will, he stands to benefit from the attack based on the compensation he would receive as executor under La. C.C.P. arts. 3033 and 3351, which provide for executor compensation in the amount of two and one-half percent of the amount of inventory in the absence of a provision in the will.[6]

*Succession of Kilpatrick*

Mr. Dempster directs this Court's attention to *Succession of Kilpatrick*, *supra*. In *Kilpatrick*, the appellate court considered a similar issue - that is whether a bank named as the decedent's executor and trustee of a trust established in an earlier will executed in 1976 had a right of action to file a petition to annul a probated will executed by the decedent in 1977. 356 So.2d at 1084-85. The executors for the 1977 will filed an exception of no right of action against the bank, and alleged it did not have a real or actual interest in annulling the 1977 will because it was not an heir or beneficiary under the 1976 will. The bank argued that it had a right of action to annul because it was named as the executor and trustee in the 1976 will. The trial court agreed with the executors of the probated 1977 will and sustained the exception of no right of action.

In analyzing the issue of whether the bank possessed a right of action, the appellate court considered whether the bank had a justiciable interest under La. C.C.P. art. 2972. *Id.* at 1085. The appellate court found that because the bank would be entitled to recover a fee as an executor under La. C.C.P. arts. 3033 and 3351, "the bank would have an actual pecuniary interest (its fee) in its probate."

---

[6] La. C.C.P. art. 3033 provides that "the person named therein as executor shall be entitled to reasonable compensation for the services which he has rendered, whether he has been confirmed as executor or not." La. C.C.P. art. 3351 further provides:

> An executor shall be allowed as compensation for his services such reasonable amount as is provided in the testament in which he is appointed.
>
> In the absence of a provision in the testament or an agreement between the parties, the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper showing that the usual commission is inadequate.

*Id.* The appellate court also recognized that as the trustee, the bank would be entitled to reasonable compensation and would also be a universal legatee because after making certain specific bequests, the decedent bequeathed the remainder of his estate to the bank as trustee. *Id.* The appellate court concluded that as the executor and trustee, the bank possessed a justiciable interest in the action to annul the 1977 will. *Id.*

Subsequent courts have recognized in *dicta* that being named as an executor of the estate qualifies as a justiciable interest. As quoted above in *Estate of Mallet*, 527 So.2d at 31 (La. App. 3rd Cir. 1988), the appellate court cited to *Succession of Kilpatrick, supra*, in its recognition that a justiciable interest to attack a succession proceeding may arise from being named as an executor of the estate. *See also Succession of Guidry*, 06-1089 (La. App. 3 Cir. 12/6/06), 945 So.2d 187, 188; *Succession of Wolf*, 05-1480 (La. App. 4 Cir. 10/4/06), 943 So.2d 537, 540 (Appellate court considered whether plaintiff who filed petition to annul a probated will was named in any capacity in any will, not just whether plaintiff was an heir or legatee.).

Mr. Milano argues in response that Mr. Dempster's reliance on *Kilpatrick* is misplaced on several different grounds. First, he contends that because the executor in *Kilpatrick* was also a universal legatee, the finding that the executor had a right of action is consistent with his position that only heirs and legatees have standing to challenge the validity of a testament. However, as noted above, the *Kilpatrick* court's reasoning indicates that it found that the pecuniary interest in recovering the executor fee established the right of action to seek to annul the probated will. *Id.* at 1085. The *Kilpatrick* court specifically stated that "the pleadings and documents establish the [bank], *both* as executor and as trustee, has a justiciable interest in this action to annul the 1977 will, and in having the 1976 will recognized and probated." *Id.* [Emphasis added.] Furthermore, subsequent

courts citing to this reasoning recognize in *dicta* that a justiciable interest can arise from being named as an executor. *Estate of Mallet*, *supra*; *Succession of Guidry*, *supra*.

Mr. Milano further questions the *Kilpatrick* decision based on the enactment of La. C.C. art. 1583 in 1997, which provides that "[t]he designation of a succession representative or a trustee, or an attorney for either of them, is not a legacy." Codification of the rule that designation of a representative is not a bequest or legacy does not overrule the finding in *Kilpatrick* that the pecuniary interest resulting from an executor's fee creates a justiciable interest sufficient to maintain a right of action to seek to annul a probated will.

Mr. Milano finally argues that the *Kilpatrick* decision was overruled by the Louisiana Supreme Court's subsequent decision in *Succession of Jenkins*, 481 So.2d 607 (La. 1986), which held that the designation of an attorney in a will is merely precatory and not binding on the executor. The *Jenkins* decision overruled a line of cases, including *Succession of Pope*, 89 So.2d 894 (La. 1956), which is cited in *Kilpatrick* as follows:

> The First National Bank of Shreveport claims its "justiciable interest" or right of action to annul is based upon its having been named decedent's executor and trustee in the 1976 will. As executor of the estate under that will, the bank would have an actual pecuniary interest (its fee) in its probate. La. C.C.P. Arts. 3033 and 3351. In *Succession of Pope*, 230 La. 1049, 89 So.2d 894 (1956), the court held that an attorney, named as attorney for the succession in a will which he claimed to be the last valid will left by decedent, had a real interest (his fee) in having the earlier will probated and hence a real interest in assailing the validity of the later will.

We disagree that the *Jenkins* decision overruled *Kilpatrick*. Our following review of the decision in *Pope* and *Jenkins* reveals that while the *Jenkins* court determined that the practice of making a testator's attorney designation binding on the estate was contrary to public policy, it did not hold that the right to recover an executor's fee was insufficient to create a justiciable interest. In *Pope*, the will at

issue, executed in 1953, named the appellee, Henry A. Mentz, Jr., as the attorney for the estate. A subsequent will executed the following year in 1954, did not name the same attorney, but rather provided for the trustees and executors to appoint an attorney of their choice to handle the estate. The trial court probated the 1954 will and the attorney, Mr. Mentz, filed an opposition to the judgment probating the will, alleging the 1954 will was invalid because the witnesses to the will did not sign in the presence of the notary and the notary subsequently removed his signature from the will in the presence of and with the consent of the testator. Following a hearing on Mr. Mentz's opposition, the trial court vacated its judgment probating the 1954 will and determined it was a nullity.

On appeal, the decedent's widow argued the attorney did not have an interest in opposing the judgment probating the will and argued that only the legitimate heirs of the decedent may bring such an action. The Louisiana Supreme Court found this contention to be without merit and relied on its holding in *Rivet v. Battistella*, 167 La. 766, 120 So. 289, that "a provision in a will designating an attorney-at-law to settle the estate of the testator is valid and binding upon those who take under the will and that, while the executors are not required to use the services of the attorney, the estate is liable to him for a reasonable fee." *Id.* at 1057. The *Pope* court reasoned that if the 1953 will was the last valid will and testament of the decedent, then Mr. Mentz "had a real interest in having it probated, and, hence, a real interest in assailing the validity of the later will." *Id.* at 1057.

In *Jenkins*, *supra*, the Louisiana Supreme Court overruled the holding in *Rivet* and other cases (including *Pope*) that the designation of an attorney in a will is binding. *Id.* at 610. The court reasoned as follows in finding the binding nature of the designation rendered the attorney a "quasi executor" in effect, and such a

designation infringed on the codal authority of the executor and created ethical

concerns:

> Thus, designation of an attorney by a testator in a will is merely precatory. It is not binding because: it infringes on the codal authority of the executor; it is not specifically authorized by law; it encourages solicitation and the appearance of impropriety on the part of attorneys; and it is contrary to general civilian principles.

*Id.*

The *Jenkins* court did not consider or overturn the specific issue of whether

the right of an executor or attorney to recover a fee in general is sufficient to create

a justiciable interest. If anything, the reasoning in *Jenkins* highlights the

distinction between an attorney and executor named in a will as the *Jenkins* court

reasoned that the binding designation improperly elevated an attorney to the level

of an executor. While the *Jenkins* decision extinguished the right of an attorney

named in a will to seek a fee from the heirs, it did not consider or repudiate an

executor's right to recover a fee or declare that the pecuniary interest created by the

fee does not create a justiciable interest. The *Jenkins* court simply determined the

binding nature of an attorney designation was not authorized by law and was

precatory. *Id.* Contrary to the finding in *Jenkins* regarding the designation of an

attorney, a testator's designation of an executor is not merely a non-binding wish

of the testator as La. C.C.P. art. 3082 provides that "[u]nless the person named in

the testament as executor is disqualified on any of the grounds assigned in Article

3097, the court *shall* render an order upon his petition for confirmation, confirming

him a testamentary executor . . .." [Emphasis added.]

Accordingly, we do not find that the decision in *Jenkins* overruled the

holding in *Kilpatrick* to the extent it determined an executor has a justiciable

interest in an action to annul a probated testament if he is named in a will that

would become operative if the attack was successful.

*Succession of Dean* and *Succession of Reno*

In addition to contesting the *Kilpatrick* decision, Mr. Milano argues that Louisiana courts have found an executor has no duty or right to attack a will or bring an action to annul a testament of a decedent. In support of this argument, Mr. Milano cites to *Succession of Dean*, 17-155 (La. App. 1 Cir. 3/29/18), 247 So.3d 746, *writ denied*, 18-679 (La. 9/14/18), 252 So.3d 479, and *Succession of Reno*, 15-854 (La. App. 1 Cir. 9/12/16), 202 So.3d 1147, *writ denied*, 16-2106 (La. 2/10/17), 215 So.3d 701. Neither case considered the exact issue in *Kilpatrick* of whether an executor named in a prior will possesses a right of action to attack a probated will under La. C.C.P. art. 2931. However, we closely analyze the facts and findings in these decisions to determine whether their finding and reasoning apply in the present matter.

In *Dean*, the decedent had three wills executed in 2007, March 2010 and August 2010. An heir filed a petition to probate the March 2010 will and challenged the validity of the August 2010 will on the grounds of undue influence and lack of capacity. Cherry Dean was named as independent executrix in the wills executed in March 2010 and August 2010. She filed a motion to intervene in the proceedings without specifying any position as to the validity of the wills, and requested that the trial court appoint her as independent executrix, which the trial court granted. However, Ms. Dean later amended her petition of intervention and joined in the petition challenging the August 2010 will.

Heirs named in the August 2010 will filed an exception of no right of action alleging that as independent executrix, Ms. Dean was obligated to defend the August 2010 will and had no procedural right or standing to attack it. In analyzing the issue of whether Ms. Dean had a right of action to attack the decedent's last executed will, the appellate court analyzed the rights and duties of succession representatives provided by applicable law and jurisprudence. *Id.* at 760-61. The

appellate court first recognized that pursuant to La. C.C.P. art. 3196, a succession representative may exercise all procedural rights available to a litigant in the performance of her duties. *Id.* at 760. It considered that a succession representative's duties are fiduciary in nature and "include but are not limited to the duty of collecting, preserving, and managing succession property; the duty to enforce all obligations in favor of the succession; and the duty to close the succession as soon as advisable." *Id.*

The *Dean* court further recognized that a "person named executor in a will has a duty to offer the will for probate, defend it from attack, and to endeavor to have it executed . . .." *Id.* at 761. Citing to its recent decision in *Succession of Reno*, *supra*, the *Dean* court concluded, however, that an executor does not have an enumerated duty or right to challenge the validity of the decedent's will. *Id.* at 761-62. The *Dean* court reasoned that the decedent's will is presumed valid and the testator presumed competent. *Id.* at 762. It further reasoned that the executor is a "fiduciary with respect to the succession" and concluded that "a challenge to the decedent's will is a challenge to the document that presumptively identifies the successors to whom the executor is obliged to transmit the estate. Inevitably, any pleading filed by the executor seeking to invalidate that instrument creates a conflict of interest between himself and those successors." *Id.* at 761. The *Dean* court finally concluded that in her capacity as independent executrix, Ms. Dean had not identified any statutory duty or right to file a claim seeking to invalidate the decedent's last will and testament, and therefore she had no procedural right to assert the claim. *Id.* at 762.

As noted above, the *Dean* court relied on its decision in *Reno* in its reasoning. The issue in *Reno* was whether the estate was liable for attorney's fees the succession administrator incurred in a will contest. In *Reno*, the decedent's son, Jimmy Reno, petitioned to be appointed provisional administrator and was

eventually appointed full administrator. Jimmy was named as a legatee in a 2007 will, but the decedent had executed a subsequent will in 2011 that did not name Jimmy as a legatee. The 2011 will named the decedent's grandson, Joshua, as the naked owner of the entirety of the decedent's estate and provided a usufruct of the estate to the decedent's surviving spouse, Dorothy Reno. The 2011 will did not name an executor and revoked prior wills. In petitioning for his appointment as an administrator of the estate, Jimmy alleged that he was a legatee in the 2007 will and anticipated that there would be a challenge against the 2011 will based on incapacity and undue influence. Ms. Reno petitioned to probate the 2011 will and shortly, thereafter, Jimmy filed a petition to probate the 2007 will. Jimmy also filed a petition to invalidate several *inter vivos* donations made to Joshua. At the time the *Reno* court issued its decision, neither will had been probated.

During the pendency of the proceedings, Jimmy submitted several petitions and tableaus of distribution for homologation seeking authority to pay succession debts and expenses, including attorney's fees incurred in the dispute over the 2011 will and *inter vivos* donations. Ms. Reno specifically contested court orders approving $57,926.51 in attorney's fees and $29,587.50 in medical expenses allegedly incurred by Jimmy to contest the validity of the 2011 will. She argued that as administrator, his duty was to preserve and protect the estate and not to fund his challenge to the 2011 will.

In determining that the estate was not liable for attorney's fees that Jimmy incurred for his personal benefit in contesting the 2011 will and other *inter vivos* donations, the *Reno* court recognized that pursuant to La. C.C. art. 1415, estate debts include administration expenses that are defined as "obligations incurred in the collection, preservation and distribution of the estate of the decedent." *Id.* at 1154. It recognized that a succession representative owes a duty to legatees, creditors, and heirs and may not place his own interest before the succession

interest. *Id.* at 1155. It further noted that it was presumed that the 2011 will was the decedent's valid will and that a succession representative has a duty to defend the validity of the testator's last will and testament and that as "administrator of the estate, Jimmy is not to assume the judicial role of determining which will is valid; his role is to produce the will for probate, leaving to any interested party the onus of impeaching its validity." *Id.*

Mr. Dempster argues that *Dean* and *Reno* are not applicable to the present matter because they only stand for the proposition that a person named executor in a will cannot challenge the same will based on the fiduciary duty of the executor to that will. He contends there is no jurisprudence holding that an executor of an earlier will is barred from challenging the legitimacy of a subsequent will that names someone else an executor. He also argues that Mr. Milano failed to address the substantive ruling in *Kilpatrick* that an executor named in an earlier will has a right of action to file a petition to annul a subsequent will based on the fee he is entitled to receive as executor if the subsequent will is declared invalid.

As discussed above, we accept that Mr. Dempster's petition to annul alleges a valid cause of action solely for purposes of evaluating whether he possesses a right of action.[7] In the present matter, we have an individual named as a successor executor in a prior will, who alleges that the decedent's subsequent wills are null and void due to the alleged failure to follow required formalities. Mr. Dempster testified that he filed the petition to annul the probated 2019 Will only after he learned that the 2019 and 2015 Wills may be absolutely null. Mr. Dempster testified that he first obtained this information after engaging in two conversations with Ms. Brandt. He testified that in the first conversation, Ms. Brandt informed him that her attorney engaged in discussions with Mr. Milano's attorney about

---

[7] We do not intend to provide an opinion on the merits whether the 2019 or 2015 Wills are null and void as alleged by Mr. Dempster.

whether the 2019 Will was null and void, and that her attorneys were looking into the issue to determine if Mr. Milano's attorney "was correct." He stated that in the second discussion, Ms. Brandt told him her attorney agreed the 2019 and 2015 Wills were null and void. She further informed Mr. Dempster that he was named as an executor in the prior 2010 Will and told him he may want to seek assistance from an attorney. Ms. Brandt also testified that her attorney told her that Mr. Milano's attorney "said the will was invalid," and that she was not aware of any issues with respect to the 2019 Will when she executed an affidavit to have the 2019 Will probated.

Though we recognize that the right to receive an executor fee is personal to the executor, based on the foregoing testimony and because Mr. Dempster is not currently serving as executor of the estate and is not the named executor in the 2019 or 2015 Wills, we do not find that the same issues and concerns regarding fiduciary duties and conflicts of interest that existed in *Dean* and *Reno* are present in the current matter. As argued by Mr. Dempster, the *Dean* court considered the rights and duties of an independent executrix to challenge the decedent's last will and testament naming the independent executrix. The *Dean* court based its determination on its recognition that a challenge to the will naming the independent executrix was a challenge to the successors identified in the will and created a conflict of interest. In addition, unlike the administrator in *Reno*, Mr. Dempster is not a legatee under the 2010 Will.

More importantly, though the trial court had not yet probated a will in *Dean*, the appellate court noted the conflict of interest an appointed executor would face in seeking to annul a probated will under La. C.C.P. art. 2931, because such action required the executor to sue himself:

> We further note that while the Code of Civil Procedure does not specifically identify who has the right to file an action to annul a will, the Code does mandate that the executor, if he has not been

> discharged, must be named as a *defendant* in any such proceeding.
> *See* La. Code Civ. Pro. art. 2931.
>
> *Dean*, 247 So.3d at 762, fn. 6.

Since Mr. Dempster is not currently the executor administering the succession, he was not required to file suit against himself when he filed the petition to annul and did not face the same conflict of interest concerns.

After the 2019 Will was probated, Mr. Dempster received information regarding the 2010 Will, as well as the claims that the subsequent wills were null and void. Pursuant to these specific facts and circumstances, and as a person named executor in a will, Mr. Dempster acted in accordance with his duty to offer the will for probate and to endeavor to have it executed as recognized in *Dean*. *See id*. at 761. Because the trial court had entered the order probating the 2019 Will, his only option to seek to enforce the 2010 Will was to have the 2019 Will annulled. In a prior disposition in this matter, this Court concluded that a probated will could "only be annulled via a direct action challenging the validity of the probated will," and further concluded that "La. C.C.P. art. 2853 does not provide a procedure to annul a testament after it has been probated."[8] *Succession of Brandt*, 21-88, 2021 WL 1394693, p. 3 (La. App. 5 Cir. 4/13/21), *writ denied*, 21-471 (La. 10/19/21), 326 So.3d 253 and 21-750 (La. 10/19/21), 326 So.3d 256.

Considering the applicable law and existing jurisprudence providing that a justiciable interest exists if one is able to benefit from the attack on the will, and pursuant to the specific facts and circumstances of this case, we find that the trial court erred in finding that Mr. Dempster did not have a procedural right to file a

---

[8] La. C.C.P. art. 2853 provides:

> If a person has possession of a document purporting to be the testament of a deceased person, even though he believes that the document is not the valid testament of the deceased, or has doubts concerning the validity thereof, he shall present it to the court with his petition praying that the document be filed in the record of the succession proceeding.
>
> A person so presenting a purported testament to the court shall not be deemed to vouch for its authenticity or validity, nor precluded from asserting its invalidity.

petition to annul the probated 2019 Will as an executor named in the 2010 Will.

Mr. Dempster contends that the estate is "worth hundreds of millions of dollars."

If the 2010 Will becomes operative, he may be eligible to receive a significant

executor fee in the amount of two and one-half percent (2 ½%) of the inventory of

the estate since the 2010 Will does not include a provision establishing the amount

of the executor fee. *See* La. C.C.P. art. 3351. Also, based on our extensive

analysis of *Dean* and *Reno*, we find that Mr. Dempster is not violating any duties

or acting contrary to the expressed duties of an executor by contesting a will that

does not name him as executor. Mr. Dempster did not seek to annul the 2019 Will

and probate the 2010 Will until he was informed that the subsequent wills may be

absolute nullities and that Ms. Brandt and Mr. Alarcon were unwilling or unable to

serve as executors. By filing the petition to annul the 2019 Will, he was fulfilling

his duty to offer the next valid will for probate and to have it executed. Further, we

do not find any authority in Louisiana that prohibits an executor named in a prior

will from filing a petition to annul a subsequent probated will that does not name

him as an executor.[9]

## DECREE

Based on the foregoing, the trial court's December 1, 2020 judgment

sustaining Mr. Milano's exception of no right of action and dismissing the Petition

to Annul Probated Testament filed by Mr. Dempster is reversed and we deny Mr.

Milano's exception of no right of action. We remand the matter for further

proceedings.

**REVERSED; EXCEPTION OF NO RIGHT OF ACTION DENIED; REMANDED**

---

[9] Because we find that Mr. Dempster possessed a right of action based on his justiciable interest as the next alternate executor named in the 2010 Will, we pretermit discussion of additional arguments presented by Mr. Dempster in support of his right of action.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 29, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-131

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)

COURTNEY C. MILLER (APPELLANT)
WILLIAM K. WRIGHT, IV (APPELLANT)
FRED L. HERMAN (APPELLEE)
CHRISTIAN N. WEILER (APPELLEE)

JEFFREY E. RICHARDSON (APPELLANT)
ROBERT J. BURVANT (APPELLEE)
MATTHEW A. SHERMAN (APPELLEE)

PHILIP A. FRANCO (APPELLANT)
W. SPENCER KING (APPELLEE)
WALTER R. WOODRUFF, JR. (APPELLEE)

### MAILED

HENRY A. KING (APPELLEE)
J. GRANT COLEMAN (APPELLEE)
TIMOTHY S. MADDEN (APPELLEE)
ATTORNEYS AT LAW
201 ST. CHARLES AVENUE
SUITE 4500
NEW ORLEANS, LA 70170

REESE F. WILLIAMSON (APPELLEE)
ATTORNEY AT LAW
909 POYDRAS STREET
SUITE 1250
NEW ORLEANS, LA 70112

DAVID R. SHERMAN (APPELLEE)
JACOB D. YOUNG (APPELLEE)
MEREDITH E. CHEHARDY (APPELLEE)
ATTORNEYS AT LAW
ONE GALLERIA BOULEVARD
SUITE 1100
METAIRIE, LA 70001